# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAMES A. STACEY and ALBERT W. ALLEN,

    Plaintiffs,

v.                                      Case No. 05-CV-72777-DT

ZF LEMFORDER,

    Defendant.
_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING IN PART, GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the court are two motions filed by Defendant ZF Lemforder ("Lemforder"): a October 23, 2006 motion to dismiss and a December 11, 2006 motion for summary judgment. Defendant's motions have been fully briefed and the court has determined that a hearing is not required. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendant's motion to dismiss and deny in part and grant in part Defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiffs James Stacey and Albert Allen filed their complaint on July 14, 2005, asserting four counts against Defendant. Each Plaintiff asserts a breach of contract and promissory estoppel claim against Defendant based on their termination, allegedly in violation of their relevant employment contracts. Plaintiffs assert subject matter jurisdiction through diversity of citizenship. Plaintiffs contend that at the time the complaint was filed, Plaintiff Stacey was a citizen of Florida and Plaintiff Allen was a

citizen of Maine. (Pls.' Compl. at ¶¶ 3-4.) The parties do not disagree that Defendant is a Delaware corporation with its principal place of business in the state of Michigan. (*Id.* at ¶ 5.)

Defendant is principally engaged in the business of manufacturing and supplying automobile components. Plaintiffs were employed with Defendant, in various capacities, until they were terminated by Defendant on June 27, 2005. In 2002, both Plaintiffs executed similar employment contracts with Defendant, which contained identical "for cause" termination provisions. Specifically, the "for cause" provisions of the contracts stated that Defendant could only terminate Plaintiffs "for cause," and "cause" was defined as:

> misconduct; illegal activities; intentional breaches of the duty of loyalty; misuse of alcohol or drugs in a manner that affects Employee's performance; dishonesty' conviction of a felony or any crime involving misrepresentation, moral turpitude or fraud; commission of any willful or intentional act which could reasonably be expected to injure the reputation, business or business relationships of the company or create a legal exposure as a result of Employee's wrongdoing; the existence of any court order or settlement agreement prohibiting Employee's continued employment; Employee's failure to perform his assigned duties as [CFO (Allen) or COO (Stacey)], after written notice to Employee of such failure, specifying, in detail, the circumstances constituting such failure, and the expiration of a thirty (30) day period following such written notice, during which Employee has failed to cure such failure to perform; or any breach of this Agreement . . .

(*See* Allen's Ex. 1 at § IV; Stacey's Ex. 1 at § IV.) Defendant does not dispute that the employment contracts, including the "for cause" provisions were valid and binding at the time of Plaintiffs' terminations. Instead, Defendant claims that there is no genuine issue of fact that both Plaintiffs were terminated for cause. Defendant asserts that Stacey directed his subordinates not to withhold Michigan taxes from his wages, despite

Defendants legal obligation to do so.  (Def.'s 12/11/06 Mot. Br. at 6.)  Defendant also claims that Allen did not take appropriate action when he learned of Stacey's refusal to pay Michigan taxes.  (*Id.* at 11-12.)  Additionally, Defendant contends that Stacey had received over $9,000 in inappropriate expense reimbursements, (*id.* at 9), and that Allen had been involved in prohibited outside business activities, (*id.* at 10).

Plaintiffs disagree, and assert that none of these alleged activities constitute the required "cause" to terminate their employment.  Moreover, Plaintiffs argue that Defendant's asserted bases for terminating their employment are false, and that they were actually terminated for other reasons not allowed by their contract.

The parties also dispute, fundamentally, whether Stacey was a Michigan resident and whether taxes were indeed required to be withheld from his contract.  Related to this issue, the parties dispute whether Stacey was a Michigan or Florida *citizen* at the time the complaint was filed.[1]  Defendant contends that Stacey was a citizen of Michigan at the time the complaint was filed and that because both it and Plaintiff Stacey are citizens of the state of Michigan, diversity jurisdiction does not exist and the case must be dismissed.

Defendant has brought a motion to dismiss for lack of subject matter jurisdiction and a motion for summary judgment arguing that Plaintiffs were terminated for "cause" as a matter of law.  Defendant has also moved for summary judgment on its counterclaim, seeking reimbursement for money paid to Michigan in amended tax returns representing Stacey's withheld taxes.

---

[1] The parties do not appear to dispute that Stacey is currently a citizen of Maine.

3

## II.  STANDARD

### A.  Motion to Dismiss

"Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment."  *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 571 (2004).  Pursuant to 28 U.S.C. §1332(a), the two requirements for diversity jurisdiction are (1) that the matter in controversy exceed $75,000.00, and (2) that complete diversity exist between the disputing parties.  28 U.S.C. §1332(a).  The party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence.  *Garza v. Bettcher Industries, Inc.*, 752 F.Supp. 753, 760 (E.D. Mich. 1990) (*citing McNutt v. General Motors Acceptance Corp. Of Indiana*, 298 U.S. 178, 189 (1936).

A federal district court has jurisdiction over a diversity action if complete diversity of citizenship exists at the time the complaint is filed.  *Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967); *Bateman v. E.I. DuPont De Nemours & Co.*, 7 F. Supp. 2d 910, 911 (E.D. Mich. 1998).  Citizenship for 28 U.S.C. §1332 purposes is synonymous not with "residence" but with "domicile."  *Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968).  A citizen, in nature, can only have one domicile at a given time but may have several places of residence.  *Williamson v. Osenton*, 232 U.S. 619, 625 (1914).  The establishment of a citizen's domicile requires "only the occurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere."  *Holmes v. Sopuch*, 639 F.2d 431, 433 (8th Cir. 1981); *Bateman*, 7 F. Supp. 2d at 911.

### B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

### III. DISCUSSION

### A. Motion to Dismiss

Defendant brings its motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) & (h)(3), claiming that at the time the complaint

was filed Plaintiff Stacey was domiciled in Michigan.  Since Defendant is also domiciled in Michigan, Plaintiff argues that diversity is destroyed and the case must be dismissed.

Defendant initially brought a motion to dismiss on August 18, 2005, on the same grounds that the instant motion is based.  The matter was fully briefed and on September 29, 2005, the court issued an order denying Defendant's motion.  The court found that Stacey had established by a preponderance of the evidence that his domicile for the purpose of 28 U.S.C. §1332(a) diversity jurisdiction was in Florida, not in the state of Michigan.  (9/29/05 Order at 5.)  Specifically, the court found that

> Defendant's evidence falls short of convincing the court that Stacey's domicile is in Michigan.  First, Stacey's action to purchase a house in Michigan does not automatically prove his domiciliary intent was in Michigan.  *Williamson*, 232 U.S. at 625.  In fact, when Defendant terminated Stacey's job on June 27, 2005, Stacey listed his Michigan house for sale one day later on June 28, 2005. . . .  This tends to show that Stacey's purpose of purchasing a house in Michigan was for the convenience of his employment at Defendant's Michigan office.  Defendant's argument that Stacey's Florida residence is a vacation home is speculative.  Defendant provided no conclusive evidence to this court to support its argument.  On the contrary, given Plaintiff's supporting evidence, if not for employment at Defendant's Michigan office, Stacey would likely be in Florida.
>
> Second, most of Stacey's activities in Michigan are activities related to his employment with Defendant.  Stacey's acceptance of employment in Michigan and his job related activities in Michigan alone are not sufficient to prove that Stacey manifests an intent to change his domicile to Michigan.  No evidence has been presented to show that Stacey obtained Michigan driver's license, registered his vehicles or obtained Michigan automobile insurance.  Stacey did not register to vote in Michigan and did not claim tax exemptions in Michigan.  In sum, most of the evidence presented reflecting Stacey's Michigan connection is employment related.  These employment related events do not convince the court that Stacey intended to remain in Michigan indefinitely or without any intention to go elsewhere.  *Holmes*, 639 F.2d at 433; *Bateman*, 7 F. Supp. 2d at 911.

(9/29/05 Order at 4-5 (footnote omitted).) The central reasoning for the court's September 29, 2005 order is that, although Stacey clearly had substantial connections to both Florida and Michigan, the preponderance of the evidence established his intent to live in Florida indefinitely. Conversely, Stacey's connections to Michigan were related to his employment with Defendant.

Defendant now claims that, following discovery, it has additional evidence which establishes that Plaintiff's domicile at the time the complaint was filed was indeed Michigan. The court disagrees. As before, Defendant's evidence only bolsters its argument that Stacey maintained a residence, perhaps even his primary residence, in Michigan. "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere."*Tate v. Collins,* 622 F.Supp. 1409, 1412 (D.C. Tenn.1985) (citing *Stifel v. Hopkins*, 477 F.2d 1116, 1126 (6th Cir.1973)). The court has never based its citizenship conclusion on the mistaken belief that Stacey maintained *more* of a physical presence in Florida than in Michigan. Rather, the court's conclusion has been primarily based on its determination that Stacey did not have the intention to remain in Michigan indefinitely, and instead he did have the intention to make his long-term home in Florida.

Defendant seems to be focused more on the concept of residency, or physical permanency. However, citizenship for diversity purposes is synonymous not with "residence" but with "domicile."[2] *Kaiser*, 391 F.2d at 1009. Defendant has failed to

---

[2] For this reason it is not conclusive that both Stacey and his wife claimed Michigan as their "residence" for various purposes, including college tuition, tax

present any additional evidence which would persuade the court to change its mind that Stacey had no intention of remaining in Michigan indefinitely. As stressed in the September 29, 2005 order, the fact that Stacey maintained a home and physical presence in Michigan, used doctors and banks in Michigan, and had friends in Michigan is understandable given that Michigan is where his job was located. (9/29/05 Order at 5, n. 1.) Indeed, the most persuasive evidence that Stacey's connections to Michigan were job-related and transitory, is the fact that he put his house on the market the *day after* he was terminated.[3]

Accordingly, as before, the court finds by a preponderance of the evidence that Stacey's domicile was in Florida on the day the complaint was filed. Diversity of citizenship was therefore present, the court properly maintains subject matter jurisdiction over this action. Defendant's motion to dismiss will be denied.

### B. Motion for Summary Judgment

#### 1. Breach of Contract Claims

Plaintiffs' complaint contains two breach of contract claims against Defendant. Stacey asserts a breach of contract claim for his termination under Count I, and Allen asserts a breach of contract claim for his termination under Count III. Defendant argues that it is entitled to summary judgment on both counts because there is no genuine

---

exemptions, and loans.

[3] Moreover, even if Stacey had established a Michigan domicile prior to June of 2005, he changed his domicile on June 28, 2005, when he put his house on the market and severed his ties to Michigan before the complaint was filed on July 14, 2005. *Napletana v. Hillsdale College*, 385 F.2d 871, 873 (6th Cir. 1967) ("A citizen of the United States can change his domicile instantly.").

issue of fact that it terminated both Plaintiffs for "cause," as defined under the relevant contracts.

"Where the employee has secured a promise not to be discharged except for cause, he has contracted for more than the employer's promise to act in good faith or not to be unreasonable." *Toussaint v. Blue Cross & Blue Shield of Michigan,* 292 N.W.2d 880, 896 (Mich. 1980). Thus, Defendant cannot rely on its good faith or reasonable belief that it had cause to terminate Plaintiffs. *Id.* "A promise to terminate employment for cause only would be illusory if the employer were permitted to be the sole judge and final arbiter of the propriety of the discharge. There must be some review of the employer's decision if the cause contract is to be distinguished from the satisfaction contract." *Id.* The Michigan Supreme Court has explained the types of questions a jury may encounter in just cause termination actions:

> The role of the jury will differ with each case. Where the employer claims that the employee was discharged for specific misconduct [(e.g.,] intoxication, dishonesty, insubordination[)] and the employee claims that he did not commit the misconduct alleged, the question is one of fact for the jury: did the employee do what the employer said he did?
>
> Where the employer alleges that the employee was discharged for one reason[, such as] excessive tardiness[,] and the employee presents evidence that he was really discharged for another reason[,] because he was making too much money in commissions[,] the question also is one of fact for the jury. The jury is always permitted to determine the employer's true reason for discharging the employee.
>
> Where an employee is discharged for stated reasons which he contends are not "good cause" for discharge, the role of the jury is more difficult to resolve. If the jury is permitted to decide whether there was good cause for discharge, there is the danger that it will substitute its judgment for the employer's. If the jurors would not have fired the employee for doing what he admittedly did, or they find he did, the employer may be held liable in damages although the employee was discharged in good faith and the employer's decision was not unreasonable.

*Toussaint,* 292 N.W.2d at 896 (footnotes omitted).  Here, Plaintiffs claim both that they were not actually terminated for Defendant's stated reasons and that, in any event, the stated reasons do not constitute cause under the employment contract.  Under *Toussaint*, if there is a triable issue under either theory, this case must proceed to the jury.  *Id.*  The court, however, finds that triable issues exist under *both* theories.

First, Plaintiffs have submitted evidence on which a jury could conclude that their terminations occurred because of the relationship between Plaintiffs and Reinhard Buhl, Defendant's Director of Division F and Plaintiffs' superior.  Specifically, Plaintiffs claim that their termination resulted from Buhl's "loss of trust" in their abilities and specifically with their perceived performance issues with Defendant's Chicago plant.  Michael Wolf, who apparently worked with and reported to Buhl (Stacey's Resp. at 5), testified that Plaintiffs were "certainly" fired "because of Chicago."  (Wolf Dep. at 64, Stacey's Ex. 10.)  He further stated that "[t]he termination in my mind was going to happen no matter what the investigation [i.e., the audit] found."  (*Id.* at 79.)  Buhl himself testified that he experienced a "loss of trust" in Plaintiffs "when the numbers in the spring of 2005 suddenly became so bad.  Before that, that was not a topic at all."  (Buhl Dep. at 61, Stacey's Ex. 8.)  Buhl testified that it was the Chicago project which first started or caused this "loss of trust."  (*Id.* at 35; Buhl Dep. II at 9-10, Allen's Ex. 19.)  Viewed in a light most favorable to Plaintiffs, and drawing all reasonable inferences, a jury could conclude that Buhl's "loss of trust," related to the Chicago plant, was the actual motivation behind Plaintiffs' termination.  Defendant has not shown, or even argued, that this motivation constitutes the proper "cause" for termination under the contracts.  Thus, because a triable issues exists with respect to Defendant's motivation, Defendant

10

cannot be granted summary judgment on this claim. *Toussaint,* 292 N.W.2d at 896 ("The jury is always permitted to determine the employer's true reason for discharging the employee.").

Plaintiffs also claim that even if Defendant actually terminated them for their stated reasons, those reasons do not constitute the required "cause" under the employment contracts. Defendant primarily relies on Stacey's direction to his subordinates, with Allen's cooperation, to not withhold Michigan income taxes from his paycheck. Although Defendant asserts that Stacey was a Michigan resident, Defendant argues for purposes of summary judgment that it does not matter because, even if Stacey was a nonresident, Michigan law still requires that income tax be withheld on income which is earned for services performed in Michigan. Mich. Comp. Laws § 206.11. Defendant claims that Stacey's actions constituted "misconduct and commission of a willful and intentional act which could reasonably be expected to injure the reputation, business or business relationship of the Company or create a legal exposure as a result of [his] wrongdoing." (Def.'s Mot. Br. at 11; Stacey Termination Letter, Def.'s Ex. R.) Defendant further claims that Allen's conduct constituted "misconduct, intentional breach of your duty of loyalty, and commission of a willful and intentional act which could reasonably be expected to injure the reputation, business or business relationship of the Company or create a legal exposure as a result of [his] wrongdoing." (Def.'s Mot. Br. at 11; Allen Termination Letter, Def.'s Ex. S.)

Plaintiffs argue that Stacey was a nonresident and that under company policy, Michigan taxes were traditionally not withheld on nonresident employees paychecks. Plaintiffs have submitted evidence that Allen himself was a nonresident who worked

11

frequently in Michigan, yet Michigan taxes were never withheld from his paycheck. (Allen Dep. at 51-52, Allen's Ex. 5.) Similarly Buhl is a nonresident who works periodically in Michigan, and he does not pay Michigan taxes for the time spent in Michigan. (Buhl Dep. at 76-77, Allen's Ex. 10.) Defendant's former President Jim Orchard was a Florida resident who told Stacey that he did not have to pay Michigan taxes. (Rose Dep. at 125, Allen's Ex. 3.)[4] Thus, Plaintiffs argue that if Stacey was a nonresident (as they contend he was), Defendant could not terminate them for their role in Michigan taxes not being withheld from Stacey's paycheck because such a policy was not uniformly enforced.

A reasonable jury could accept this theory, based on the facts presented by Plaintiffs, and the theory is also supported by Michigan law. *Toussaint,* 292 N.W.2d at 897 ("An employer who only selectively enforces rules or policies may not rely on the principle that a breach of a rule is a breach of the contract, there being in practice no real rule. An employee discharged for violating a selectively enforced rule or policy would be permitted to have the jury access whether his violation of the rule or policy amounted to good cause.").

Moreover, contrary to the parties' assertions, it does not appear to the court that the breach of contract issue necessarily turns on conclusively establishing Stacey's

---

[4]The court recognizes that Plaintiffs may have a hearsay problem with this evidence. However, because Defendant did not challenge the issue, and because the objection is not yet before the court, the court cannot rule definitively as to whether an exception applies. Depending on how the evidence is presented, it is possible that it may be admitted as to go to Stacey's state of mind, as opposed to proving the truth of the matter asserted. In any event, because Plaintiffs have also presented evidence with respect to Allen and Buhl, evidence as to whether Orchard paid tax or had tax withheld is cumulative.

residence.  Indeed, based on Stacey's responses to Defendant's interrogatories, it appears indisputable that, under Michigan's tax law,[5] Stacey spent the requisite number of days in Michigan to be deemed a Michigan resident at least for 2004 and 2005. (Def.'s Mot. to Dismiss at 12.)  However, Plaintiffs' employment contracts do not state that any act which exposes Defendant to legal liability constitutes cause for termination. Instead they require "*misconduct* . . . [or] commission of any *willful or intentional* act which could *reasonably be expected* to injure the reputation, business or business relationships of the company or create a legal exposure as a result of Employee's wrongdoing."  (*See* Allen's Ex. 1 at § IV; Stacey's Ex. 1 at § IV. (Emphases added.)) Based on the facts presented to the court, it is for the jury to determine whether Stacey and Allen's actions constitute "misconduct" or "willful or intentional acts which could reasonably be expected to . . . create a legal exposure."

A jury could conclude that both Stacey and Allen reasonably believed he was not a Michigan resident and not required to pay Michigan taxes.  In 2004 for example, Stacey admits he was in Michigan for 209 days, and under the statute 183 days are required to establish residency.  Mich. Comp. Laws. § 206.18.  Although he was in Michigan the requisite number of days, the computation was somewhat close, so as to allow a jury to infer that he actually believed he would not qualify as a resident.  More persuasive, though, is the fact he relied on the advice of his accountant who opined that

---

[5]"If an individual lives in this state at least 183 days during the tax year or more than 1/2 the days during a taxable year of less than 12 months he shall be deemed a resident individual domiciled in this state."  Mich. Comp. Laws. § 206.18.  Stacey admitted spending 209 days in Michigan in 2004 and 106 out of 180 days in Michigan in 2005 before he was terminated.  (Def.'s Mot. to Dismiss, Ex. P.)

Stacey was not a Michigan resident and had no tax obligation in Michigan. (Hicks Dep. at 23-25, 36-37, Allen's Ex. 21; Stacey Dep. at 79-80, Allen's Ex. 15.) A jury could infer that neither Stacey nor Allen reasonably expected their actions would cause Defendant to incur legal liability.

Finally, Plaintiffs have also demonstrated a triable issue as to the whether the remaining asserted reasons for their termination constitute "cause": Stacey's alleged inappropriate expense reimbursements, and Allen's involvement in outside business activities. With respect to Stacey's expense reports, Stacey has provided sufficient evidence to proceed to a jury as to whether the expenses were proper and, even if technically improper, whether they were nonetheless acceptable under company tradition or policy. (Stacey Resp. at 12-14.) *See Toussaint,* 292 N.W.2d at 897 (finding that a jury should assess whether selectively enforced policies can constitute just cause for termination). Allen has likewise produced sufficient evidence for a jury to conclude that his outside activities were known and sanctioned by Defendant and/or did not interfere with his obligation to devote his full time and best efforts to the performance of his duties and furtherance of the business of Defendant, as required under his employment contract.[6] (*See* Allen's Resp. at 6-7.) The court thus finds that Defendant

---

[6] Allen argues that until the instant motion for summary judgment, Defendant has never used his outside business activities as a basis for his termination. (Allen Resp. at 5.) In its reply, Defendant points out that "[e]vidence of employee misconduct occurring before termination is admissible as substantive evidence even if the former employer did not know of the misconduct until after the termination. Just cause for termination may include facts and circumstances existing at termination but not known to the employer." *Wright v. Restaurant Concept Mgmt., Inc.,* 532 N.W.2d 889, 891 (Mich. Ct. App. 1995) (*quoting Bradley v. Philip Morris, Inc.,* 486 N.W.2d 48 (1992)). While this is generally the law of Michigan regarding just cause terminations, the fact that Defendant only recently listed this reason as a basis for its termination decision could be viewed by

has not met its burden of demonstrating that there is no triable issue that its additional reasons for terminating Plaintiffs constitute the requisite "cause" under their contracts.

Accordingly, the court will deny Defendant's motion for summary judgment on Plaintiffs' breach of contract claims.

### 2. Promissory Estoppel

Defendant also seeks summary judgment on Plaintiffs' two claims for promissory estoppel.[7] Defendant argues that promissory estoppel is not available to Plaintiffs because the promise on which they allegedly relied is contained within the employment contracts forming the bases for their breach of contract claims. *See General Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1042 (6th Cir. 1990) ("[W]here . . . the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable.") (citation omitted). Plaintiffs do not disagree, but contend that promissory estoppel was asserted as an alternative theory to their breach of contract claims in the event Defendant denied the existence of the relevant contracts. Because Defendant has now admitted the validity of the contracts, Plaintiffs have agreed to dismiss their promissory estoppel

---

the jury as an indication that it was not actually one of its motivations. *Toussaint,* 292 N.W.2d at 896 ("The jury is always permitted to determine the employer's true reason for discharging the employee.").

[7]Plaintiff's complaint asserts a promissory estoppel claim by Stacey under Count II, and a promissory estoppel claim by Allen under Count IV.

claims. (Allen Resp. at 8; Stacey Resp. at 15, n.9.) Accordingly, the court will dismiss Plaintiffs' promissory estoppel claims.[8]

### 3. Defendant's Counterclaim

Finally, Defendant argues that it is entitled to summary judgment on its counterclaim against Stacey.[9] In its counterclaim, Defendant asserts that Stacey breached his duty of loyalty to Defendant by directing his subordinates not to withhold Michigan taxes from his paycheck. (Ans. at 6-7.) Defendant claims that Stacey's breach has forced Defendant to incur tax liability for the wages not withheld. (*Id.*) In its motion for summary judgment, Defendant asserts that there is no genuine issue of fact that it had to pay $47,735.72 to the Michigan Department of Treasury in amended tax returns because "Stacey ordered subordinates to not withhold Michigan income taxes from his paycheck during the years 2003, 2004 and 2005." (Def.'s Mot. Br. at 19.) Defendant claims that it was required to pay this amount because under Michigan law "[i]f an employer erroneously fails to withhold Michigan income tax from compensation paid to an employee . . . he is liable for payment of the amount which should have been withheld, whether or not it is collected from the employee by the employer." (*Id.* (citing MAC Rule 206.21(1).)

---

[8]In the event Defendant's position should change at trial, and it denies the validity of the contracts, the court will allow Plaintiffs to reinstate their promissory estoppel claims.

[9]Defendant's counterclaim is actually asserted against both Stacey and Allen. (See Ans. at 6-7.) It is not clear to the court whether Defendant has abandoned its claim against Allen or whether Defendant simply has not moved for summary judgment against Allen.

Defendant's one-paragraph argument on this issue fails to convince the court that there is no triable issue on Defendant's counterclaim. First, Defendant rests solely on its apparently voluntary decision to amend its tax returns as support for its liability to the Michigan Department of Treasury. While it is likely, that *some* taxes should have been withheld from Stacey's paycheck, as Stacey points out there are still questions with respect to the appropriate amount, based on the days actually worked in Michigan, for which Stacey is responsible.

More fundamentally, however, even if the court were persuaded that Defendant was liable to the Michigan Department of Treasury for $47,735.72, Defendant has not shown that *Stacey* is liable to *Defendant* for that amount. Defendant's counterclaim asserts that Stacey breached his duty of loyalty. Stacey argues that in discharging that duty, he was allowed to

> rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by any of the following:
>
> > (a) One or more directors, officers, or employees of the corporation, or of a business organization under joint control or common control, whom the director or officer reasonably believes to be reliable and competent in the matters presented.
>
> > (b) Legal counsel, public accountants, engineers, or other persons as to matters the director or officer reasonably believes are within the person's professional or expert competence.

Mich. Comp. Laws § 450.1541a(2). Stacey claims that he relied on the advice of Jim Orchard, former Defendant's former President/CEO, who told him he did not have to pay taxes in Michigan. (Def.'s Ex. 7 at 125.) Further, Stacey has also submitted

17

evidence that it was company policy for non-residents to not have Michigan taxes withheld from their pay. (*See* Def.'s Resp. at 16-17.) Viewing this evidence in a light most favorable to Stacey, a reasonable jury could conclude that he did not breach his duty of loyalty in instructing subordinates to not withhold Michigan taxes from his paycheck. Accordingly, Defendant's motion for summary judgment on its counterclaim will be denied.

## IV. CONCLUSION

IT IS ORDERED that Defendant's motion to dismiss [Dkt # 61] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [Dkt. # 74] is DENIED IN PART AND GRANTED IN PART. It is GRANTED in that Plaintiffs' promissory estoppel claims (Counts II & IV) are DISMISSED WITHOUT PREJUDICE.[10] It is DENIED in all other respects.

    S/Robert H. Cleland  
    ROBERT H. CLELAND  
    UNITED STATES DISTRICT JUDGE

Dated: February 6, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 6, 2007, by electronic and/or ordinary mail.

    S/Lisa Wagner  
    Case Manager and Deputy Clerk  
    (313) 234-5522

---

[10] When a final judgment is entered in this case on all counts, the dismissal of the promissory estoppel claims will become with prejudice.

S:\Cleland\JUDGE'S DESK\C3 ORDERS\05-72777.STACEY.Diversity.ForCauseTermination.wpd